**Michael L. HAILEY, Plaintiff,**

**v.**

**YELLOW FREIGHT SYSTEM, INC., Defendant.**

**No. 84–5111–CV–SW–0.**

United States District Court, W.D. Missouri, Southwestern Division.

Dec. 19, 1984.

minal and moved to Joplin, Missouri—near Baxter Springs—only to be informed, shortly after arrival in Joplin, that the commitment would not be honored.

The matter comes before me on defendant's motion for "judgment on the pleadings," based upon the theory that plaintiff's claims (fraudulent misrepresentation and promissory estoppel) are shown, on the face of the complaint, to be time-barred under the relevant Kansas statutes of limitation. Plaintiff counters with a suggestion that the Missouri statutes of limitation .must govern, under which his claims are timely; and that in any event, as shown by an affidavit filed by plaintiff, defendant is estopped by its conduct in connection with certain settlement discussions from relying upon any limitations defense.

Barry Langford, Joplin, Mo., for plaintiff.

Daniel Hornbeck, c/o Yellow Freight, Overland Park, Kan., for defendant.

## ORDERS ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

ROSS T. ROBERTS, District Judge.

Plaintiff, an over-the-road truck driver, seeks damages from defendant, a trucking company, based upon the latter's alleged failure to honor a commitment to transfer plaintiff to its Baxter Springs, Kansas terminal. In reliance upon that commitment, plaintiff asserts, he terminated his employment at defendant's Phoenix, Arizona ter-

## I

### PROCEDURAL MATTERS

■ Defendant's motion, and plaintiff's response thereto by affidavit, leave the case in a rather peculiar posture. Although unaccompanied by any reference to a particular Rule or subsection thereof, defendant's motion is styled as a "Motion for Judgment on the Pleadings," presumably made under Rule 12(c). It is clear, however, that a 12(c) motion may not be filed until the pleadings have closed, and in particular may not be filed by a defendant until after answer. 5 *Wright & Miller, Federal Practice and Procedure* § 1367, at 687 (1969), and cases cited therein. Here, defendant has not yet filed an answer. Plaintiff has responded, on the other hand, not by seeking leave to amend his complaint to *plead* an exception to a statute of limitations defense which may indeed (at least as to one cause of action) be shown on the face of the present complaint, as would ordinarily be appropriate if not in fact necessary, *see,* e.g., *Horn v. Burns and Roe,* 536 F.2d 251, 253 n. 4 (8th Cir. 1976); *Kincheloe v. Farmer,* 214 F.2d 604, 605 (7th Cir.1954); *Stewart Coach Industries, Inc. v. Moore,* 512 F.Supp. 879, 886 (S.D.Ohio 1981) (all standing for the propo-

sition that when a complaint would otherwise show, upon its face, a statute of limitations defense, it is incumbent upon plaintiff, if he expects to rely upon some limitations exception or tolling provision, to plead the same), but instead by filing an affidavit which seeks to raise the issue. In turn, defendant—which filed no extraneous material in connection with its motion—has not moved to strike the affidavit and has not otherwise responded to it.

■ In the circumstances, and as a matter of practicality in terms of advancing this case to final resolution, it would seem that the most useful procedure would be to treat defendant's motion as one under Rule 12(b)(6), which may be filed before any responsive pleading; to refuse to entertain plaintiff's affidavit and associated materials—which the court has the discretion to do under Rule 12(b), see 5 *Wright & Miller, supra* § 1371 at 705–06, even if it is not compelled to do so here[1]—thus reaching the present motion simply as defendant asserts it (that is, with respect to matters shown on the face of the complaint); and to permit plaintiff to file an amended complaint properly asserting his theory that defendant is estopped to rely upon a statute of limitations defense, with the parties being at liberty, after the filing of any such amended complaint, to address new matters raised therein either under Rule 12 or Rule 56. This will have the advantage of allowing the court to deal now with certain legal issues already briefed by the parties, to which the affidavit adds nothing of substance in any event, while leaving plaintiff free to protect himself, in the event of an adverse ruling upon any of those legal issues, by pleading and raising his estoppel theory. The alternative of accepting plaintiff's affidavit for present purposes—even assuming the court could do so—would be to convert the matter into a Rule 56 motion, see Rule 12(b), requiring the notice and further response period necessary in those circumstances, *id.*, thus further de-

laying a ruling on the above-mentioned legal issues while accomplishing nothing which would affect their resolution. Plaintiff's theory that defendant is estopped to raise any limitations defense will accordingly be treated as a matter not presently before the court.

## II

### STATUTE OF LIMITATIONS

As pertinent to the present inquiry, plaintiff's complaint avers that in July of 1977, at defendant's request, plaintiff transferred from defendant's Baxter Springs terminal to its Phoenix terminal; that plaintiff subsequently requested (through an attorney) a re-transfer to Baxter Springs; that defendant advised the re-transfer could be accomplished if plaintiff would sign a "quit slip" at the Phoenix terminal and move to Baxter Springs; that in reliance upon that representation plaintiff signed the "quit slip" and moved to Joplin; but that on June 4, 1979, after all of the foregoing, defendant advised plaintiff that the offer to transfer plaintiff to employment at Baxter Springs would not be honored. Although the complaint is silent as to plaintiff's location when he received the latter information, it is certainly possible—and open to plaintiff to prove—that he was in Missouri at that time, and for purposes of the present motion I will assume that to be so. Plaintiff's suit was filed on May 22, 1984.

Distilled to its essence, defendant's position is that under § 516.190 (previously 516.180), R.S.Mo.1969 (as amended) (Missouri's "borrowing" statute), both of plaintiff's causes of action must be treated as having "originated" in Kansas, and are barred under K.S.A. § 60–513, establishing a two year limitations period on actions for fraudulent misrepresentation, and K.S.A. § 60–512, creating a three year limitations period for actions such as plaintiff's promissory estoppel claim. Plaintiff's response,

---

1. In situations where—as here—a moving party has submitted no extraneous materials in support of a Rule 12 motion, there is at least some doubt that the opposing party is entitled to sub-

mit such materials. *See Park-In-Theatres, Inc. v. Paramount-Richards Theatres, Inc.,* 7 F.R.D. 723, 724–25 (D.Del.1948).

based primarily upon *Renfroe v. Eli Lilly & Co.*, 686 F.2d 642, 646–47 (8th Cir.1982), is that under Missouri law a cause of action "accrues" or "originates"[2] where "the final element of the cause of action occurs," and that under § 516.100, R.S.Mo.1969 (as amended), that "final element" occurs both when, *and where,* plaintiff's damage "was sustained and capable of ascertainment." According to plaintiff's theory, if he was in Missouri when he received the information that defendant would not employ him at Baxter Springs, § 516.100 would dictate that his causes of action "originated" or "accrued" in Missouri, and those causes of action would thus be timely under § 516.-120, R.S.Mo.1969 (as amended), which establishes a five year limitations period for both claims.

■ As concerns the promissory estoppel claim in this case, I believe plaintiff's argument must be rejected. Even if it be granted that § 516.100 is properly used as the touchstone in determining when and where a cause of action "originated" or "accrued" *for purposes of § 516.190*—a proposition I regard as doubtful[3]—the statute affords no aid to plaintiff here.

The elements of plaintiff's damage with respect to that promissory estoppel claim— the losses occasioned by his signing the "quit slip" in Arizona, and moving to Joplin,[4] or alternatively his loss of employment at the Baxter Springs terminal, *see generally Restatement (Second) of Contracts* § 349, Comment b (1981)—were, within the accepted construction of § 516.100, "sustained and capable of ascertainment" the moment defendant failed to honor its promise, since all those elements of loss or potential loss occurred either prior to or at that moment. Plaintiff's promissory estoppel claim was thus complete, within the meaning of § 516.100, at the time defendant breached its alleged promise.

In this situation, I believe the question is effectively controlled by the decisions in *Burns v. Union Pacific R.R.*, 564 F.2d 20, 21–2 (8th Cir.1977), and *Jenkins v. Thompson*, 251 S.W.2d 325, 326–27 (Mo.1952). In the former case, a Title VII/§ 1981 employment termination action, plaintiff (a California resident) had worked for defendant in Kansas City, Kansas, and his future work (but for the termination) would have been performed there. In applying § 516.-190, the Eighth Circuit held that the claim

---

**2.** As the District Court opinion in *Renfroe* points out, 541 F.Supp. 805, at 807, the Missouri courts have used the terms "originate," "arise" and "accrue" interchangeably when interpreting § 516.190.

**3.** Although both the District and Appellate Court in *Renfroe* appear to assume that § 516.100 is to be used in this way, I am unable to find any Missouri authority—or for that matter authority from any other state with a similar statutory scheme—supporting the proposition. To the contrary in fact, *Brown v. Grinstead*, 212 Mo. App. 533, 252 S.W. 973, 975 (1923), holds that § 516.100 has no area of application in connection with § 516.190. Furthermore, as Judge Donnelly pointed out in *Bowling v. S.S. Kresge Company*, 431 S.W.2d 191 (Mo.1968), when a foreign statute of limitations is "borrowed" or proposed for borrowing under § 516.190, the internal law of that other state relevant to the statute—including its law as to when a cause of action "accrues" under the statute—is taken along with the statute. *Id.* at 193. It is, obviously, rather difficult to square this rule with the approach taken in *Renfroe.*

The conventional approach used in determining when and where a cause of action originated or accrued for purposes of a· "borrowing" statute,

and in fact the one the Missouri cases have consistently displayed, *see,* e.g., *Trzecki v. Gruenewald*, 532 S.W.2d 209 (Mo.1976) (en banc); *Bowling v. S.S. Kresge Company, supra; Girth v. Beaty Grocery Company*, 407 S.W.2d 881 (Mo. 1966); *Richardson v. Watkins Bros. Mem. Chapels*, 527 S.W.2d 19 (Mo.App.1975), is to apply the older choice of law rules typified by the *Restatement (First) of Conflict of Laws* (1934). *See generally,* Leflar, *American Conflicts Law* § 128, at 257 n. 4 (1977); and *see also Sack v. Low*, 478 F.2d 360, 366–67 (2d Cir.1973).

**4.** Plaintiff also alleges damages in the nature of "medical expenses" and attorneys' fees. The former apparently has reference to a loss of medical insurance coverage occasioned by termination of plaintiff's employment in Arizona. It is unclear what the latter item refers to, other than perhaps the fees charged by plaintiff's Arizona attorney in negotiating the alleged agreement to re-transfer to Baxter Springs; but it seems rather clear in any event that there is no viable theory under which plaintiff could recover attorney's fees for any post-breach work—i.e., in prosecuting this action.

"originated" in Kansas and was governed by the applicable Kansas limitations period. In the latter case, plaintiff—an employee of the Missouri Pacific Railroad—claimed that he was wrongfully removed from service as a conductor—that act occurring in the State of Arkansas—and was subsequently wrongfully terminated—notice of which he received at his residence in Tennessee. Both claims were postured as breach of contract claims. The alleged breaches were seen by the Missouri Supreme Court as occurring in Arkansas, and the causes of action were held to have "originated" there within the meaning of § 516.190, thus requiring application of that state's limitations period.

▮ While neither *Burns* nor *Jenkins* elucidates precisely the basis for its holding, both clearly support the general theory that in breach of contract actions the cause ordinarily "originates" or "accrues," for purposes of a "borrowing" statute, where the breach occurs, with that place being the place of performance. *See Auglaize Box Board Co. v. Kansas City Fibre Box Co.,* 35 F.2d 822, 823 (6th Cir.1929), *cert. den.,* 281 U.S. 730, 50 S.Ct. 247, 74 L.Ed. 1147 (1930); and *see also Meekison v. Groschner,* 153 Ohio St. 301, 91 N.E.2d 680, 682–83 (1950). Since I believe plaintiff's promissory estoppel claim is essentially analogous to a breach of contract claim for these purposes, and since here the place of performance called for by defendant's alleged promise was obviously in the State of Kansas, it would seem that § 516.190 requires application of the controlling Kansas statute of limitations.

Plaintiff's argument that his promissory estoppel cause of action did not come into being under § 516.100 until (and where) he received actual notice of defendant's breach of promise—and his reliance upon *Renfroe v. Eli Lilly & Co., supra,* in that connection—is unpersuasive. Cases—like *Renfroe*—which involve slowly developing physical conditions such as cancer have presented something of a problem under § 516.100; and in that rather unusual setting there has been a tendency to hold that

some actual knowledge of the condition (and perhaps even of its relationship to the alleged causative agent) is necessary. *See,* e.g., *Krug v. Sterling Drug, Inc.,* 416 S.W.2d 143 (Mo.1967); *Clohesy v. Century Electric Co.,* 142 S.W.2d 780 (Mo.App. 1940). That is not, however, the problem in the present case. The point raised by plaintiff here concerns notice or discovery of the alleged wrongful act; and it is clear, under the usual construction of § 516.100, that such notice or discovery is *not* an element of the statute's operation. *See Garrett v. Conklin,* 52 Mo.App. 654, 659 (1892); and *see generally Jepson v. Stubbs,* 555 S.W.2d 307, 312–13 (Mo.1977) (en banc); *Chemical Workers Basic Union, Local No. 1744 v. Arnold Savings Bank,* 411 S.W.2d 159, 163–65 (Mo.1966) (en banc); *Knight v. M.H. Siegfried Real Estate, Inc.,* 647 S.W.2d 811, 814 (Mo.App.1982); *Fischer v. Browne,* 586 S.W.2d 733, 736–37 (Mo. App.1979). As to his promissory estoppel claim, I conclude that when—or where—plaintiff learned of defendant's failure to honor its alleged promise is irrelevant to an application of either § 516.100 or § 516.-190.

Defendant suggests—correctly I believe—that K.S.A. § 60–512 is the Kansas statute of limitations which applies to a cause of action of the nature of plaintiff's promissory estoppel claim. *See Head v. Knopp,* 225 Kan. 45, 587 P.2d 867, 869 (1978); *Lorson v. Falcon Coach, Inc.,* 214 Kan. 670, 522 P.2d 449, 457 (1974). That statute provides for a three year limitations period. Since plaintiff's promissory estoppel claim "originated" or "accrued" as of June 4, 1979, and since the present case was not filed until May 22, 1984, the action is, upon the record presently before me, rather clearly time-barred.

I reach a different result with respect to plaintiff's fraud claim. Some troublesome questions exist, however, concerning the method of analysis to be employed.

▮ As to that fraud claim, § 516.120(5) (specifying that in cases of fraud, "the cause of action ... shall not be deemed to have accrued until the discovery by the

aggrieved party ....") appears to have a more direct bearing on matters than § 516.-100. If § 516.120(5) is accorded a function in the application of § 516.190, corresponding to that which *Renfroe* accords § 516.-100 in other cases (again, a proposition I consider dubious), the conclusion is that plaintiff's claim accrued, for purposes of § 516.190, when plaintiff became aware of the alleged fraud. Carrying that analysis to the next step—that at least in these circumstances the cause of action "originated" or "accrued" not only when but *where* plaintiff discovered the fraud—as the Eighth Circuit's decision in *Renfroe* by implication mandates, *see* 686 F.2d at 647 n. 9, the result is that the cause of action "originated" or "accrued" in Missouri. Section 516.190 thus becomes inapplicable and the matter is governed by—and timely under—the five year limitations period established by § 516.120(5).

The same result, however, is reached even under what I consider to be a more conventional approach. As noted previously, the usual method of determining where a cause of action "originates" or "accrues" for purposes of a borrowing statute, is to turn directly to the older choice of law tests generally typified by the *Restatement (First) of Conflicts of Law* (1934). *See* footnote 3, *supra,* and authorities, including Missouri decisions, collected therein. Following that approach, one is led in turn to *Restatement* § 377, Note 4, which specifies that in fraud cases "the place of the wrong is where the loss is sustained," this being a specialized application of the section's general rule—applicable in determining where a cause of action "originated"—that the "place of the wrong is in the state where the last event necessary to make the actor liable for an alleged tort takes place."

■ Under this rule one might conclude—and some courts have, *see Sack v. Low, supra*—that the place where the "loss is sustained" in fraud cases is the place "where its economic impact is felt, normally the plaintiff's residence." *Id.* at 366. In the context of the present fraud claim, that "economic impact" is the damage caused by plaintiff's reliance upon defendant's alleged misrepresentation—the termination of his Arizona employment and his travel and associated expenses in moving from Arizona. Plaintiff was, apparently, an Arizona resident at the time those events occurred. Furthermore, even though I believe the quoted observation from *Sack* is a somewhat misleading oversimplification, and that the place where a plaintiff acts to his detriment in reliance upon a defendant's fraudulent misrepresentation, or the place where the property or employment in question is located, will in theory often be the place where the "loss" is considered sustained, regardless of plaintiff's residence,[5] *see,* e.g., *Hester v. New Amsterdam Casualty Company,* 287 F.Supp. 957, 972 (D.S.Car.1968), *aff'd in part and dismissed in part,* 412 F.2d 505 (4th Cir.1969) (fraudulent land transaction regarding Florida land, consummated in Florida, governed by Florida limitations even though plaintiffs were residents of Georgia); *Boulevard Airport v. Consolidated Vultee Air Corp.,* 85 F.Supp. 876, 880 (E.D.Pa.1949) (acts in reliance upon defendant's alleged fraudulent representations took place in Pennsylvania; cause accordingly "originated" in Pennsylvania); *Thompson v. Lyons,* 281 Mo. 430, 220 S.W. 942, 945 (1920) (where fraudulent land deal transacted in Kansas, cause "originated" in Kansas under § 516.190, even though plaintiff was a resident of Missouri), the latter test also marks Arizona as the place where the "loss" was sustained. Under either approach, however, the analysis ulti-

---

**5.** In many cases—particularly securities cases and the like—the place of acting will in fact be the place of plaintiff's residence, simply because that is where he will usually act in matters of that nature (e.g., in placing an order to buy securities, in executing a contract, etc.). As the cases cited above demonstrate, however, that injury-causing act of reliance may often occur in some place other than the state of plaintiff's residence; or, as in land transaction or employment situations, the "loss" is rather clearly identified with a state other than that in which the plaintiff resides.

**1338**

mately leads back to Missouri. That is because Arizona has a statute of limitations regarding fraud very much like Missouri's, in specifying that a cause of action for fraud "shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud ...." A.R.S. § 12–543(3). If, in turn, one follows the Eighth Circuit's mandate in *Renfroe* (as I am obliged to do), that when the accrual of a cause of action is contingent upon some element of discovery by or notice to the plaintiff, the place where that contingency is fulfilled is the place where the cause of action "originates" or "accrues" for purposes of § 516.190, the Missouri five year limitations period will again be found controlling.