686 F.2d 642
 Paula RENFROE and Marsha Smith, Appellants, Cross/Appellees,
v.
ELI LILLY & COMPANY; Rexall Drug Company; E. R. Squibb &
Sons, Inc.; The Upjohn Company; Blue Line Chemical Company;
Reed and Carnrick Pharmaceuticals; Abbott Laboratories;
Carnrick Laboratories, Division of W. Carnrick Co.; Comark,
Inc.; Kremers-Urban Co.; McNeil Laboratories, Inc.; Merck &
Company, Inc.; Rowell Laboratories, Appellees, Cross/Appellants.
Paul RENFROE and Marsha Smith, Appellants, Cross/Appellees,
v.
ELI LILLY & COMPANY; Rexall Drug Company; E. R. Squibb &
Sons, Inc.; The Upjohn Company,
The Blue Line Chemical Company, Appellee, Cross/Appellant,
Reed and Carnrick Pharmaceuticals; Abbott Laboratories;
Carnrick Laboratories; Kremers-Urban Company;
McNeil Lab; Merck & Co., Inc.,
Rowell Laboratories, Inc., Cross/Appellant.
Paula RENFROE and Marsha Smith, Cross/Appellees,
v.
ELI LILLY & COMPANY; Rexall Drug Company; E. R. Squibb &
Sons, Inc.; The Upjohn Company; Abbott
Laboratories, Cross/Appellants.
The Blue Line Chemical Company; Reed and Carnrick
Pharmaceuticals; Carnrick Laboratories; Rowell Laboratories,
McNeil Laboratories, Inc.; Merck & Co., Inc., Cross/Appellants.
Paula RENFROE and Marsha Smith, Cross/Appellees,
v.
ELI LILLY & COMPANY; Rexall Drug Company; E. R. Squibb &
Sons, Inc.; The Upjohn Company; The Blue Line
Chemical Company; Reed and Carnrick
Pharmaceuticals; Abbott Laboratories,
Carnrick Laboratories; Comark, Inc., Cross/Appellants.
Kremers-Urban Company; McNeil Laboratories, Inc.; Merck &
Co., Inc.; Rowell Laboratories,
Paula RENFROE and Marsha Smith, Cross/Appellees,
v.
ELI LILLY & COMPANY; Rexall Drug Company; E. R. Squibb &
Sons, Inc.; The Upjohn Company; The Blue Line Chemical
Company; Abbott Laboratories; Carnrick Laboratories; Comark,
Inc.; McNeil Laboratories, Inc.; Merck & Co., Inc.; Rowell
Laboratories,
Reed and Carnrick Pharmaceuticals and Kremers-Urban Company,
Cross/Appellants.
 Nos. 81-2275 to 81-2279.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 15, 1982.
Decided Aug. 23, 1982.
Rehearing and Rehearing En Banc Denied Sept. 30, 1982.
 
 Hullverson, Hullverson & Frank, Inc. by James E. Hullverson, Sr., Stephen H. Ringkamp, St. Louis, Mo., and Belli & Choulos by John E. Kalin, San Francisco, Cal., for appellants/cross-appellees.
 Kortenhof & Ely, Joseph M. Kortenhof, George F. Kosta, Amelung, Wulff & Willenbrock, Robert A. Wulff, St. Louis, Mo., for appellees/cross-appellants, The Blue Line Group.
 Harvey L. Kaplan, Vivian W. Wiberg, Laura D. Stith, Shook, Hardy & Bacon, Kansas City, Mo., for appellees/cross-appellants Eli Lilly and Co., Rexall Drug Co., E. R. Squibb & Sons, Inc., The Upjohn Co., Abbott Laboratories, McNeil Lab, Inc. and Merck & Co.
 Before BRIGHT, Circuit Judge, HENLEY,* Senior Circuit Judge, and McMILLIAN, Circuit Judge.
 BRIGHT, Circuit Judge.
 
 
 1
 The plaintiffs, Paula Renfroe and Marsha Smith, brought this action in federal district court in Missouri to recover damages allegedly sustained as a result of their in utero exposure to diethylstilbestrol (DES). All but one of the defendant drug companies joined in a motion for summary judgment, contending that the plaintiffs' causes of action were barred by the applicable statutes of limitations. The district court[1] denied the motion for summary judgment on Renfroe's claims and partially granted the motion for summary judgment on Smith's claims. We affirm.
 
 
 2
 I. Factual Background.
 
 
 3
 A. Paula Renfroe's Claim.
 
 
 4
 Paula Renfroe was born on February 14, 1954, in Independence, Missouri. Renfroe's mother took Stilbestrol, a marketed version of DES, while pregnant with Paula. The Renfroe family continued to reside in Missouri until 1960, after which they moved twice, eventually settling in California in 1969. In 1971, doctors at a public clinic in California informed Paula Renfroe that she had a small growth on her cervix and advised her to seek further medical attention. Subsequent visits to another physician led to a diagnosis of adenocarcinoma of the cervix for which doctors performed a radical hysterectomy. Renfroe v. Eli Lilly & Co., 541 F.Supp. 805 at 810-811 (E.D.Mo., 1982). During this time, Renfroe's physician informed her that there seemed to be a relationship between her cancer and her mother's ingestion of DES. Id. at 811.
 
 
 5
 In early 1973, Renfroe moved from California to Missouri, where she resided until the end of the year. She then moved to the State of Washington. Near the end of 1975, Renfroe moved back to California, where, in the fall of 1976, she read an article documenting the link between DES and cancer. Soon thereafter, Renfroe contacted an attorney.
 
 
 6
 B. Marsha Smith's Claim.
 
 
 7
 Marsha Smith was born in St. Louis, Missouri, on August 25, 1952. Smith's mother took Stilbestrol during her pregnancy at her obstetrician's suggestion. The Smith family continued to reside in Missouri until 1963, when they moved, eventually settling in California in 1966. Renfroe v. Eli Lilly & Co., supra, at 812.
 
 
 8
 Marsha Smith moved to Ohio in 1972. While living there in 1974, her physician performed the cervical biopsy that first disclosed her cancer. Id. Within twenty-four hours, she returned to California where her parents still resided. A short time later, doctors in California confirmed the diagnosis of squamous cell carcinoma, for which they performed a radical hysterectomy and lymph node dissection. After the surgery, her attending physicians informed her that they believed her cancer was related to her mother's ingestion of DES. Id. at 812. Approximately a year later, Smith responded to a notice requesting DES mothers and daughters to call a certain telephone number. The woman answering the telephone advised Smith to contact an attorney, which she did.
 
 
 9
 II. Procedural Background.
 
 
 10
 After retaining legal counsel, Renfroe and Smith filed a complaint on August 17, 1978. The complaint alleged that Renfroe and Smith had each developed cancer as a result of in utero exposure to DES. They asserted claims against certain drug companies that manufactured or distributed DES in Missouri between 1947 and 1964,[2] and alleged causes of action based on negligence per se, negligence, breach of express and implied warranty, fraud and deceit, strict liability, and conspiracy to defraud and deceive. Renfroe and Smith each sought recovery for pain and suffering, medical expenses, lost wages, loss of the ability to bear children, and punitive damages.
 
 
 11
 After filing answers and conducting discovery, the drug companies, with the exception of Comark, Inc., jointly moved for summary judgment on the ground that the plaintiffs' actions were barred by the applicable statutes of limitations. Specifically, the drug companies claimed that the California one-year, or Ohio two-year statute of limitations, incorporated by the Missouri borrowing statute, barred the plaintiffs' causes of action.
 
 
 12
 The district court denied the defendants' motion on Renfroe's claim stating that her cause of action might have originated in Missouri, making the Missouri borrowing statute inapplicable. It granted summary judgment to some of the defendants[3] on Smith's claims on the ground that her cause of action against them was fully barred whether her action originated in Ohio or California. It denied summary judgment to the other defendants (the Blue Line Group)[4] on Smith's claims, however, because her action was not barred as to them if her cause of action originated in Ohio.
 
 
 13
 The district court denied all motions for reconsideration. Pursuant to the parties' request, however, it then certified its order for immediate appeal pursuant to 28 U.S.C. § 1292(b). All parties petitioned this court for review, and we granted permission to appeal.
 
 
 14
 III. Discussion.
 
 
 15
 A. Plaintiffs' Appeals.
 
 
 16
 In these appeals, Renfroe and Smith contend that the district court should not have applied the borrowing statute to their actions. According to the Missouri borrowing statute,
 
 
 17
 (w)henever a cause of action has been fully barred by the laws of the state, territory or country in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state. (Mo.Ann.Stat. § 516.190 (Vernon Supp. 1982).)
 
 
 18
 The district court recognized the need to determine where their respective causes of action originated before determining whether the plaintiffs' actions were barred. Noting that Missouri courts have used the terms "originate," "arise," and "accrue" interchangeably when interpreting the borrowing statute, compare Bowling v. S. S. Kresge Co., 431 S.W.2d 191, 193 (Mo.1968) (originate) with Garrett v. American Family Mutual Insurance Co., 520 S.W.2d 102, 119 (Mo.Ct.App.1974) (arise) and Schnabel v. Taft Broadcasting Co., 525 S.W.2d 819, 826 (Mo.Ct.App.1975) (accrue), the district court held that a cause of action originates where the final element of the cause of action occurs. It then rejected the plaintiffs' suggestion that it adopt choice of law principles to determine where their causes of action originated. Renfroe v. Eli Lilly & Co., supra, 541 F.Supp. at 807-808. Instead, using the general limitations section[5] as a guide, it concluded that the plaintiffs' causes of action accrued when, and originated where, their damage was sustained and capable of ascertainment. Id. at 807-808. The district court went on to determine that Renfroe's cause of action originated in either Missouri or California, depending on where she should have discovered that DES caused her cancer. Id. at 811-812. It also determined that Smith's cause of action originated in either Ohio or California, depending on where she actually discovered that her mother's ingestion of DES may have caused her cancer. Id. at 812.[6]
 
 
 19
 Renfroe and Smith maintain that the borrowing statute does not apply because their causes of action originated in Missouri where all of the defendants' tortious activity occurred. Specifically, they point to the distribution, sale, purchase, and their own exposure to DES, all of which took place in Missouri. It is irrelevant, they contend, that their injuries became manifest as cancer and that they discovered the causal connection between DES exposure and their cancer years later in a state other than Missouri. Plaintiffs argue that their causes of action accrued when they were last exposed to DES in utero because it was then that they sustained the physiological and genetic injuries that ultimately led to the development of cancer.
 
 
 20
 Because their actions originated in Missouri, the plaintiffs contend that the Missouri five-year statute of limitations applies. See Mo.Ann.Stat. § 516.120 (Vernon 1952). Pointing out that both plaintiffs filed their complaint within five years after reaching the age of majority, until which time the statute of limitations is tolled, see Mo.Ann.Stat. § 516.170 (Vernon 1952), the plaintiffs conclude that they timely filed their actions under Missouri law.
 
 
 21
 In ruling on statutes of limitations issues, this court must apply the law of the forum. Guaranty Trust Co. v. York, 326 U.S. 99, 108-09, 65 S.Ct. 1464, 1469-1470, 89 L.Ed. 2079 (1945). Missouri, the forum, considers statutes of limitations issues procedural, and, therefore, governed by Missouri law. Keaton v. Crayton, 326 F.Supp. 1155, 1157-58 (W.D.Mo.1969). Missouri allows five years to bring personal injury actions. Mo.Ann.Stat. § 516.120 (Vernon 1952). When a cause of action "originates" in a state other than Missouri, however, Missouri applies the foreign state's statute of limitations through the borrowing statute. If that state's statute of limitations bars the action, the borrowing statute bars it in Missouri as well. Mo.Ann.Stat. § 516.190 (Vernon Supp. 1982).
 
 
 22
 In applying the statute of limitations, we do not accept the plaintiffs' argument that their causes of action originated where the defendants' allegedly tortious activity occurred and where they were last exposed to DES. Even assuming that the plaintiffs' in utero exposure to DES caused some physiological or genetic alterations, which later became manifest as cancer, the causes of action alleged by these plaintiffs still had not accrued at the time of their last in utero exposure to DES.[7]
 
 
 23
 According to Missouri law, a cause of action does not accrue until the plaintiff has sustained at least some damage capable of ascertainment. See Mo.Ann.Stat. § 516.100 (Vernon 1952). The plaintiffs, however, did not base their actions on the alleged physiological or genetic injury received in utero; instead, they cited the development of cancer and the resulting surgery as the damage element of their claims. Under Missouri's general limitations provision, however, the present causes of action did not exist until they developed detectable cancer.[8] When the cancer developed and became capable of ascertainment, the final element of the cause of action occurred, and their respective causes of action accrued under Missouri law. See Patch v. Playboy Enterprises, Inc., 652 F.2d 754, 755 (8th Cir. 1981) (per curaim).[9]
 
 
 24
 The district court therefore correctly determined that plaintiffs' causes of action originated where the plaintiffs first developed cancer capable of ascertainment.
 
 
 25
 B. Defendants' Cross-Appeals.
 
 
 26
 The drug companies do not contest the district court's application of the Missouri borrowing statute. Instead they argue in their cross-appeal that the district court incorrectly interpreted the statutory standard for determining when a cause of action accrues.
 
 
 27
 As mentioned above, the district court referred to section 516.100 in determining when a cause of action accrues. According to that provision, a cause of action accrues when the plaintiff sustains damage from a legal injury that is capable of ascertainment. See supra note 5 (quoting text of section 516.100). The district court realized, however, the unfairness of concluding in a case such as this that a plaintiff's claim accrued as soon as any physical injury manifested itself, because of the possibility that the plaintiff might not be able to know the likely cause of the injury at that time. See Renfroe v. Eli Lilly, supra, 541 F.Supp. at 809. Unable to find a controlling case, the district court relied on Krug v. Sterling Drug, Inc., 416 S.W.2d 143 (Mo.1967),[10] to conclude that the "Missouri courts would not bar a cause of action for slowly developing injuries caused by a drug because the plaintiff learned too late the cause of her injuries, especially where plaintiff learned of that cause as soon as her doctor did." Renfroe v. Eli Lilly & Co., supra, 541 F.Supp. at 809. Accordingly, the district court held that the plaintiffs' causes of action did not accrue until (1) the plaintiffs suffered reasonably discoverable injuries, and (2) the plaintiffs knew or should have known that DES caused their injuries. Id. at 810.
 
 
 28
 The drug companies contend that the district court incorrectly held that the plaintiffs' causes of action did not accrue until they possessed sufficient medical evidence that DES caused their injuries. Instead, they maintain that, under Missouri law, the plaintiffs' causes of action accrued as soon as their injuries were capable of ascertainment, regardless of whether the plaintiffs knew or could have known that DES caused their injuries. As a result, the drug companies argue that the district court should have held that Renfroe's cause of action accrued in California when she had surgery for cancer and when the medical profession knew of the alleged link between exposure to DES and cancer. Under the Missouri borrowing statute, therefore, Renfroe's cause of action would be barred because it would be barred by the California one-year statute of limitations. In making this argument, the drug companies rely on Jepson v. Stubbs, 555 S.W.2d 307 (Mo.1977) (en banc); Fischer v. Browne, 586 S.W.2d 733 (Mo.Ct.App.1979). Chemical Workers Basic Union, Local No. 1744 v. Arnold Savings Bank, 411 S.W.2d 159 (Mo.1966) (en banc);
 
 
 29
 We do not believe that these cases contradict the district court's conclusion. Although all three cases discuss when a cause of action accrues, none does so in the context of a suit in which the plaintiff did not know or could not have known the cause of the injury when the injury was received. In both Jepson v. Stubbs and Fischer v. Browne, the plaintiffs brought malpractice actions against their attorneys. In each, the court rejected the plaintiff's contention that his cause of action did not accrue until he actually discovered the damage from the defendant's acts. Instead, the court held that the cause of action accrued when the damage was sustained and capable of ascertainment. Compare 555 S.W.2d at 312 with 586 S.W.2d at 836-37. In Chemical Workers Basic Union, the plaintiff sued a bank to recover the amount paid by the bank on a check with an unauthorized endorsement. The court rejected plaintiff's contention that its cause of action did not accrue until plaintiff actually discovered the unauthorized endorsement, holding instead that the cause of action accrued when the amount of damage was capable of ascertainment. 411 S.W.2d at 165.
 
 
 30
 The district court considered a factual situation unlike that presented in the cases cited by the drug companies. In those cases, the plaintiffs knew or could have known the cause of the injury as soon as they discovered the injury. These cases do not discuss when the cause of action accrues if the plaintiff does not know or cannot know the cause of the injury when the injury is received. Because of the substantial deference traditionally accorded to a district court's interpretation of local law in the absence of controlling state precedent, see Jump v. Goldenhersh, 619 F.2d 11, 15 (8th Cir. 1980); In re American Beef Packers, 548 F.2d 246, 248 (8th Cir. 1977), we decline to reverse the district court's conclusion on this issue.
 
 
 31
 C. Blue Line Group's Cross-Appeal.
 
 
 32
 In the second cross-appeal, the Blue Line Group[11] takes issue with the district court's conclusion that Smith's cause of action against them might not be barred by the Ohio statute of limitations.
 
 
 33
 The district court decided that it was impossible to determine whether Smith's claims originated in Ohio or California. See Renfroe v. Eli Lilly & Co., supra, 541 F.Supp. at 812. Because discovery had revealed that Smith had read articles indicating a possible link between DES and cancer, and that she had been having yearly medical examinations since that time, the district court stated that it was possible, although unlikely, that she should have known the cause of her cancer when her physician first informed her of the diagnosis in Cincinnati. Smith's claim would have originated in California, if not in Ohio, because she returned to California the day after the diagnosis in Ohio, and other physicians there informed her that they believed DES caused her cancer. The district court, therefore, examined the statutes of limitations in both states to see if Smith's claims were timely in either state. Id. at 813.
 
 
 34
 Because the drug companies in the Blue Line Group did not maintain registered agents for service of process in Ohio for a two-year period after Smith learned of her injury, the district court ruled that the Ohio statute of limitations was tolled as to them. Id. at 813-814.[12] With the benefit of the tolling provision in Ohio's statute of limitations, the district court determined that Smith's action, if it originated in Ohio, would not be barred as to the Blue Line Group, and therefore would not be barred by application of Missouri's borrowing statute. Accordingly, it denied the Blue Line Group summary judgment on Smith's claims. Id. at 814.
 
 
 35
 The Blue Line Group insists that Smith's causes of action could not have originated in Ohio because, during the time she lived there, she did not possess enough medical information to verify that DES caused her cancer. We disagree.
 
 
 36
 The district court carefully reviewed all of the information presented by the defendants in support of their motion for summary judgment which bore on when Smith knew or should have known that DES caused her cancer. It noted that as early as 1971, Smith learned, from an article in Time magazine, of the possible relationship between DES and cancer in young women. Id. at 812. The court also noted that Smith's mother had told Smith at the same time that she had taken DES during pregnancy. Thus, Smith knew as a result of her conversation with her mother that she might develop cancer and, as a precaution, had yearly medical examinations beginning in 1971. Id. From these facts, the district court concluded that it was possible that Smith should have known that DES had caused her cancer when the biopsy performed in Ohio in 1974 revealed the presence of cancerous cells.[13]
 
 
 37
 The district court did not attempt to decide on the motion for summary judgment whether Smith should have known in Ohio that DES caused her cancer, or whether, as the Blue Line Group suggests, she should have known the cause of her injury only after she reached California. Summary judgment is appropriate only where there are no disputed issues of material fact. See Ralph's Distributing Co. v. AMF, Inc., 667 F.2d 670, 672 (8th Cir. 1981); Fed.R.Civ.P. 56(c). Because a dispute existed over whether Smith knew or should have known in Ohio that DES caused her cancer, the district court properly considered Ohio law in determining whether to grant the Blue Line Group's motion for summary judgment.
 
 
 38
 The Blue Line Group also argues that the Ohio courts would not apply the Ohio tolling provision[14] in this case because all defendants in the Group were subject to substituted service in Ohio. They rely solely on a footnote in Scheer v. Air-Shields, Inc., 61 Ohio App.2d 205, 401 N.E.2d 478 (1979), which states:
 
 
 39
 Lantsberry v. Tilley Lamp Co. (1971), 27 Ohio St.2d 303, 272 N.E.2d 127, holds that the statute of limitations is not tolled when the injury occurred in a foreign jurisdiction, following the principle established in Wentz v. Richardson, (1956), 165 Ohio St. 558, 138 N.E.2d 675. Paragraph 2 of the syllabus of Wentz states that R.C. 2305.15 (the tolling provision) "contemplates causes of action which (arise) in Ohio," and thus Wentz might conceivably lead to an interpretation that when the injury was in Ohio but the cause of action (the breach of legal duty) had its inception in a foreign jurisdiction, the "saving clause" does not apply and the action must be brought within two years of the injury irrespective of whether the defendant was within or without the state.
 
 
 40
 However, in the instant case, the Complaint alleges both injury in Ohio and alternative causes of action originating in Ohio. Accordingly, it is not necessary for us at this time to resolve whatever conflict there might be between Lantsberry and Wentz, while holding that Air-Shields' presumptive absence from the state tolled the statute of limitations. (401 N.E.2d at 480 n.2 (emphasis in original).)
 
 
 41
 We reject the Blue Line Group's argument. First, the general rule in Ohio considers a defendant out-of-state for purposes of the tolling provision if the defendant is not amenable to personal service within the State of Ohio. See Mead Corp. v. Allendale Mutual Insurance Co., 465 F.Supp. 355, 361 (N.D.Ohio 1979); Seeley v. Expert, Inc., 26 Ohio St.2d 61, 269 N.E.2d 121, 128 (1971). The Blue Line Group admits that this is the general rule. The footnote upon which they rely indicates only that conflicting case law "might conceivably lead" to the interpretation advanced by the Blue Line Group. See Scheer v. Air-Shields, Inc., supra, 401 N.E.2d at 480 n.2. Neither this court, nor the district court, however, need follow the dicta of an intermediate state appellate court. The district court, therefore, properly applied the settled law in this area as enunciated by the Supreme Court of Ohio.[15]
 
 
 42
 IV. Conclusion.
 
 
 43
 We conclude, therefore, that the district court properly ruled on the drug companies' motion for summary judgment. Contrary to the contentions of Renfroe and Smith, each plaintiff's cause of action originated where she first sustained damage capable of ascertainment. Further, the district court properly held that, under Missouri law, each plaintiff's cause of action accrued only when she knew, or should have known, that DES caused her cancer. Finally, the district court properly determined that Smith's cause of action might have originated in Ohio, and that, under Ohio law, the statute of limitations would be tolled as to those defendants not amenable to personal service for the statutory period. Accordingly, we affirm.
 
 
 
 *
 Judge Henley assumed senior status on June 1, 1982
 
 
 [1]
 The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri. See Renfroe v. Eli Lilly & Co., 541 F.Supp. 805 (E.D.Mo.1982)
 
 
 [2]
 The complaint named the following drug companies as defendants: Eli Lilly & Company; Rexall Drug Company; E. R. Squibb & Sons, Inc.; The Upjohn Company; The Blue Line Chemical Company; Reed and Carnrick Pharmaceuticals; Abbott Laboratories; Carnrick Laboratories, Division of W. Carnrick Company; Comark, Inc.; Kremers-Urban Company; McNeil Lab, Inc.; Merck & Company, Inc.; Merck Sharp & Dohme Orthopedics Company, Inc.; and Rowell Laboratories. The plaintiffs later agreed to dismiss Merck Sharp & Dohme Orthopedics Company without prejudice
 Plaintiffs freely admitted that they could not identify the manufacturers of the drugs ingested by their mothers. They therefore joined all of the defendant manufacturers because they were the principal distributors of DES in Missouri at the time. This joinder proceeded on theories of market share and enterprise liability. In the present posture, we, of course, express no opinion on the validity of these theories.
 
 
 [3]
 The district court granted summary judgment to Eli Lilly & Company; Rexall Drug Company; The Upjohn Company; Abbott Laboratories; E. R. Squibb & Sons, Inc.; Merck & Company, Inc.; and McNeil Lab, Inc. See infra part III B
 
 
 [4]
 This group of manufacturers consists of the following: The Blue Line Chemical Company; Rowell Laboratories; Reed and Carnrick Pharmaceuticals; Kremers-Urban Company; and Carnrick Laboratories, Division of W. Carnrick Company. Although Comark, Inc., did not join in the motion for summary judgment, it did join the Blue Line Group for purposes of the appeal. See infra part III C
 
 
 [5]
 Section 516.100, the general limitations provision, provides:
 Civil actions, other than those for the recovery of real property, can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued; provided, that for the purposes of sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained. (Mo.Ann.Stat. § 516.100 (Vernon 1952) (emphasis added).)
 
 
 [6]
 The district court predicated these determinations on its view that the plaintiffs' claims did not accrue under Missouri law "until (1) the plaintiffs suffered reasonably discoverable injuries and (2) the plaintiffs knew or, in the exercise of reasonable diligence should have known, whichever first occurred, that their injuries were caused by DES exposure. Renfroe v. Eli Lilly & Co., supra, 541 F.Supp. at 810 (emphasis in original). The information before the district court centered on the time that Smith actually discovered, and the time that Renfroe should have discovered, the cause of her injury. We discuss the defendants' objections to these determinations more fully below. See infra part III B
 
 
 [7]
 In the present posture of this case, we, of course, express no opinion on whether the defendants' conduct caused the plaintiffs' injuries
 
 
 [8]
 We also express no opinion on whether plaintiffs could have had some other cause of action under Missouri law prior to developing cancer
 
 
 [9]
 The plaintiffs also argue that this court is free to disregard the general limitations provisions, § 516.100, in determining where a cause of action accrues because that section only prescribes when a cause of action accrues. We acknowledge that this section, by its terms, only specifies when a cause of action accrues. Following the Third Circuit, however, we refer to it also in determining where a cause of action accrues
 We think the concept of when a cause arises and the concept of where a cause arises, both used to aid in the application of statutes of limitations, are in pari materia. In other words, the cause arises where as well as when the final significant event that is essential to a suable claim occurs. (Mack Trucks, Inc. v. Bendix-Westinghouse Auto. Air Brake Co., 372 F.2d 18, 20 (3d Cir. 1966), cert. denied, 387 U.S. 930 (87 S.Ct. 2053, 18 L.Ed.2d 992) (1967).)
 As a result, we believe that the plaintiffs' causes of action originated where they sustained damage capable of ascertainment. Although the Missouri courts have not directly addressed the issue of where a cause of action originates, they have applied this rule in many cases without comment. See Patch v. Playboy Enterprises, Inc., supra, 652 F.2d at 755 n.6 (citing Missouri cases).
 
 
 [10]
 The district court noted:
 Plaintiff in Krug had been prescribed a drug for an arthritic condition. She began to take the drug in 1953; in 1955, she noticed a blurring of her eyesight, and by 1957, her vision was sometimes "fuzzy." However, she continued to take the drug by prescription until 1961 or 1962, by which time she had lost her central vision. Suit was filed in 1963 and the defendant drug manufacturer claimed that it was barred by the five-year statute of limitations. There was testimony that plaintiff's doctor was not aware of the cause of her worsening eyesight until certain medical literature was published in 1961, and hence that plaintiff did not know the cause of her condition until that year. The Court of Appeals held that plaintiff's suit was not untimely as a matter of law, either because defendant's negligence in failing to warn plaintiff's doctor of the hazards of the drug could be said to have continued until 1961 or because it was not clear that plaintiff's injury was capable of ascertainment more than five years prior to the institution of her action, and plaintiff did not know the cause of her injury until 1961. (Renfroe v. Eli Lilly & Co., supra, at 808.)
 
 
 [11]
 See supra note 4
 
 
 [12]
 The other drug companies, which are not appealing this ruling, had registered agents in Ohio during the relevant period and were therefore not subject to the tolling provision. Smith's claims against them were fully barred by Ohio law and were therefore barred by the Missouri borrowing statute. Smith's claims against these defendants were also fully barred by California law and therefore barred by the Missouri borrowing statute if her cause of action originated in California. See Renfroe v. Eli Lilly & Co., supra, at 815
 
 
 [13]
 The district court noted that
 it is impossible to determine whether plaintiff Smith's claims originated in Ohio or in California. Although plaintiff may have believed that her cancer, when discovered in Ohio, was caused by DES, it is not clear that she was aware of sufficient medical authority to verify her opinion until she was told by her treating doctors in California that they believed that DES exposure caused her cancer. (Renfroe v. Eli Lilly & Co., supra, at 812.)
 
 
 [14]
 According to the Ohio tolling provision, "(w)hen a cause of action accrues against a person, if he is out of the state, * * * the period of limitation for the commencement of the action * * * does not begin to run until he comes into the state * * *." Ohio Rev.Code Ann. § 2305.15 (Page 1981)
 
 
 [15]
 The argument made by the Blue Line Group is further undercut by the peculiar nature of Ohio law. Under the Ohio syllabus rule, the court prepares the syllabus that appears at the front of the decision and that syllabus presents the only binding precedent; the rest of the opinion reflects the opinion of the author only. See Beck v. Ohio, 379 U.S. 89, 93 n.2, 85 S.Ct. 223, 226 n.2, 13 L.Ed.2d 142 (1964) (quoting Thackery v. Helfrich, 123 Ohio St. 334, 175 N.E. 449, 450 (1931))