729 F.Supp. 662 (1989)
In re TETRACYCLINE CASES.
Karen WAYNE, Plaintiff,
v.
LEDERLE LABORATORIES, et al., Defendants.
Nos. 83-0034-CV-W-O-A, 83-1200-CV-W-1.
United States District Court, W.D. Missouri, W.D.
April 10, 1989.
*663 William T. Bernard, Bernard, Gatrost, Rice & DiCavalcante, Timothy H. Bosler, Kansas City, Mo., and Roger G. Burnett, Sevier, Burnett & Maloney, Liberty, Mo., for plaintiff.
Elizabeth D. Badger, Morrison, Hecker, Curtis, Kuder & Parrish, Thomas F. Fisher, Shughart, Thomson & Kilroy, Patrick Lysaught, Sherman, Wickens, Lysaught, and W. Russell Welsh, Polsinelli, White & Vardeman, Kansas City, Mo., for defendants.

ORDER
WHIPPLE, District Judge.
Before the court is a motion filed October 25, 1988, by defendant E.R. Squibb & Sons, Inc., for summary judgment on the grounds plaintiff's claims are barred by the statute of limitations. Plaintiff filed a response in opposition on November 28, 1988. On January 11, 1989, Squibb filed a reply in support of the motion. For the reasons set forth below, the motion will be granted and summary judgment will be entered in favor of defendant and against plaintiff.

I. Statement of the Case

In this products liability suit, plaintiff alleges she suffered tooth discoloration as a result of ingesting a tetracycline product manufactured by defendant. Squibb argues that the Missouri borrowing statute requires application of a Kansas statute of limitations because plaintiff was a Kansas resident from the age of two years until she reached adulthood. Under the statute, as urged by Squibb, the claims would be barred.
Plaintiff's response is threefold. She asserts that the claim originated in Missouri, where the product was prescribed, where she learned of the alleged cause of the tooth discoloration, and where damages allegedly were ascertained. Assuming the claim originated in Missouri, plaintiff argues first that the Missouri borrowing statute should not apply. She argues alternatively that, if the Missouri borrowing statute applies, the Missouri tolling provision also should apply and extend the accrual time to when she became 21 years old (rather than 18 years, as in Kansas). Finally, she argues that Missouri's five-year limitation should apply rather than the Kansas two-year limitation.

II. Facts

Plaintiff was born June 27, 1962, when her family lived in Missouri. About October 26, 1964, she and her family moved to Kansas, where she remained a resident continuously until she reached college age. Meanwhile, she was treated by a physician in Missouri. The physician prescribed an antibiotic drug called Mysteclin-F, which contains tetracycline. The product was purchased in a Missouri pharmacy, and was ingested by plaintiff when she was in Missouri. The product was ingested on nine occasions from February 4, 1963, to November 1, 1966.
Beginning in April 1963, defendant inserted warnings in tetracycline packages that the products could cause tooth discoloration if ingested during tooth formation years. The warning also appeared in each annual edition of the Physician's Desk Reference beginning in 1964. The side-effect was discussed in numerous articles and notices appearing in various major medical and dental journals between 1963 and 1969.
In 1969, plaintiff's permanent teeth erupted and she discovered her teeth were discolored. Plaintiff was informed that year in her dentist's office, in Missouri, that tetracycline ingestion could cause such discoloration. Plaintiff became 18 years old on June 27, 1980. She commenced this lawsuit on November 2, 1983, in federal court in Missouri. Plaintiff became 21 years old on June 27, 1983.
The question here is whether a statute of limitations bars plaintiff's claims. The critical preliminary issues, however, are which *664 statute of limitations applies and when the limitations period began.

III. Discussion

A. Borrowing Statute
Ordinarily a five-year limitation applies to personal injury actions against product manufacturers. See, Mo.Rev.Stat. §§ 516.100 and 516.120, et seq. However, if a cause of action originates outside Missouri, a "borrowing statute" is used to determine the limitations period. When Mo.Rev.Stat. § 516.190 applies, it requires use of the statute of limitations for the state where the claim originated. The purpose of a borrowing statute is primarily to prevent a plaintiff from forum shopping for a statute of limitations. Patch v. Playboy Enterprises, 652 F.2d 754, 756 (8th Cir.1981). In Patch, at 756, the court said such a statute prevents a plaintiff from gaining more time to bring an action merely by suing in a forum other than where the cause of action accrued. Thus, it will be necessary to determine where plaintiff's claim originated, as well as when it originated, to find whether the claim is barred.

1. When Claim Originated
In Patch, at 755 footnotes 3 and 6, the court cited numerous cases for the proposition that Missouri courts have borrowed other states' statutes of limitations when the last act necessary for the cause of action or the injury occurred outside Missouri. In that case, at 757, the court specifically rejected the theory that Missouri's own limitations statute should be used if the most significant contacts were with Missouri. In Dorris v. McClanahan, 725 S.W.2d 870, 872 (Mo. en banc 1987), the court held that the "significant contacts" test in the Restatement Second on Conflict of Laws, Section 145, was preempted by the Missouri legislature upon passage of Mo.Rev.Stat. § 516.100. In pertinent part, Mo.Rev.Stat. § 516.100 provides:
"that for the purposes of Sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment...." In recent years, courts have had several peculiar occasions to determine when a cause of action accrues.
In King v. Nashua Corp., 763 F.2d 332, 333 (8th Cir.1985), King was a meat wrapper for 26 years and she brought a products liability action to recover for a respiratory disease associated with inhaling fumes from thermal labels. King was hospitalized with the respiratory illness in July 1977. Incorrectly thinking the plastic wrap caused her injury, King filed suit in April 1978 against the wrap manufacturers. She did not learn until 1982 that fumes from thermal labels, not plastic wrap, caused her injuries, and she did not file suit in Missouri until February 1984. The court said, at 333, "Although King may not have discovered her injuries were likely caused by the thermal labels until 1982, the medical community was aware of the causation link as early as 1975." Thus, the damage was ascertainable when King was hospitalized in July 1977, and the statute of limitations began to run on that date and expired in July 1982. Id., at 334. The court noted, at 333, Missouri courts have made it clear that the statute focuses on the damage and not the discovery of its cause. See, Jepson v. Stubbs, 555 S.W.2d 307, 312-313 (Mo. 1977) (en banc); Lato v. Concord Homes, Inc., 659 S.W.2d 593, 594-595 (Mo.App. 1983).
In Renfroe v. Eli Lilly & Co., 686 F.2d 642 (8th Cir.1982), two plaintiffs sued on injuries from in utero exposure to diethylstilbestrol (DES). Although the physiological and genetic injuries occurred while they were in utero, their causes of action did not accrue until many years later. The court said, "When the cancer developed and became capable of ascertainment, the final element of the cause of action occurred, and their respective causes of action accrued...." Id. at 647. A problem remained, however, because one plaintiff developed cancer in 1971, but the medical community did not generally accept the causal link between DES and cancer until 1972. See, Renfroe v. Eli Lilly & Co., 541 F.Supp. 805, 809-810 (E.D.Mo.1982), where *665 the district court had corrected that inequity by finding that the cause of action accrued when she (1) suffered reasonably discoverable injuries, and (2) knew or, in the exercise of reasonable diligence should have known, whichever occurred first, that her injuries were caused by DES. Renfroe, supra, 686 F.2d at 646 n. 6.
The rule to be drawn from these cases is one which balances fairness and the policy considerations behind limitations periods. The statute requires injured parties to proceed expeditiously to press their claims, thereby protecting potential defendants from the unfair burden of defending acts done a long time prior. Of course, it would be improper to bar plaintiffs at the end of the period merely because their damages were not manifest yet, or because the nature or cause of damages could not be ascertained (unless the legislature shows it intends such a result). Thus, the accrual date does not arise until the damages and cause are reasonably ascertainable.
However, this rule does not protect the injured party who is dilatory in determining damages and cause. Just as statutes of limitations require a party to proceed with dispatch to press a claim, a party is and should be required to proceed diligently to find whether a claim exists. If a party has suffered injury, and the extent and cause can be determined, the party has and should have the burden of making that determination in a reasonable time.
As discussed above, Renfroe does not require that the plaintiff have actual knowledge of the nature, extent and cause of damages. Requiring actual knowledge would permit a party to put putative defendants at a disadvantage by failing to ascertain damages, all contrary to the policy underlying statutes of limitations. Rather, the injured party has the burden to exercise reasonable diligence in ascertaining whether there is a cause of action. Such a requirement is consistent with the policy behind statutes of limitations.
With that principle in mind, the next question is when plaintiff's injury was capable of ascertainment. In this instance, the damage to plaintiff was apparent when her teeth erupted in 1969. At that time, the causal connection between tetracycline products and tooth discoloration was well accepted, well known and well publicized in the medical and dental communities. For about six years, tetracycline packages had contained information on that topic. With reasonable diligence, plaintiff easily could have ascertained the nature, extent and cause of her damages nearly thirteen years before she filed her lawsuit.[1]

2. Where Claim Originated
Upon revealing that the time at which the cause of action accrued was when plaintiff could have ascertained her damages and cause, the analysis now must address where the cause of action accrued. Plaintiff argues it accrued in Missouri, so the Missouri borrowing statute should not be used to apply the Kansas statute of limitations. Defendant argues the cause of action accrued in Kansas, so the Missouri borrowing statute must apply the Kansas limitation.
In Renfroe, supra, 686 F.2d at 647 n. 9, the court noted that Missouri courts had not directly addressed the issue of where a cause of action originates, but had applied a rule in many cases without comment. The court referred to Patch v. Playboy, supra, 652 F.2d at 755 footnote 6, which listed numerous cases on that point. The Renfroe court adopted the Third Circuit concept that the cause arises where the last significant event that is essential to a suable claim occurs. See, Mack Trucks, Inc. v. Bendix-Westinghouse Auto. Air Brake Co., 372 F.2d 18, 20 (3rd Cir.), cert. denied, 387 U.S. 930, 87 S.Ct. 2053, 18 L.Ed.2d 992 (1967); Hailey v. Yellow Freight System, Inc., 599 F.Supp. 1332, 1334-1335 (W.D.Mo. 1984), quoting Renfroe, supra, 686 F.2d at 646-647, wherein under Missouri law a cause of action accrues, originates or arises when and where plaintiff's damage was *666 both sustained and capable of ascertainment.
In this instance, the last significant event that is an essential element to plaintiff's claim is the discovery of damage. To determine where that occurred, one needs to look only as far as where the plaintiff was when she made the discovery. Clearly, as a Kansas resident, she was in Kansas when the damage was discovered. Although plaintiff may have made occasional brief visits into other states, such trips would have no significance regarding the damage or discovery of it.
Plaintiff argues that, having been informed in Missouri about the causal connection to tetracycline, the cause arose in Missouri. This argument is appealing at first glance, until one realizes that the act of being informed about a causal connection is not essential to the claim. Certainly causation is an essential element, but that already had occurred years before plaintiff was told of it. To recover on her claim, plaintiff need not allege or prove when or how she was told about the cause, even though she would need to prove what the cause was. Therefore, the location in which plaintiff learned about the connection to tetracycline was not significant in figuring where the cause arose.[2]
Plaintiff relies upon other acts which occurred in Missouri (prescription, purchase, and ingestion) to show her claim arose in Missouri. However, the last significant element, injury, developed long after those events. Therefore they cannot control. As discussed above, the "significant-contacts" test does not apply, so even the totality of the events in Missouri cannot sustain plaintiff's argument.
Inasmuch as the plaintiff's cause of action originated in Kansas, the Missouri borrowing statute applies and imposes the Kansas statute of limitations. In personal injury actions, K.S.A. § 60-513 applies a two-year limitation unless substantial injury or the fact of injury is not reasonably ascertainable until more than two years after the wrongful conduct. However, even if injury or ascertainment occurs later, the lawsuit must be filed within ten years of "the act giving rise to the cause of action."
The alleged wrongful conduct occurred prior to ingestion of the tetracycline product. Therefore, the two-year limit was exceeded long before plaintiff reasonably could ascertain her injury. However, the ten-year limit also expired at least by 1976, ten years after the product last was ingested. Thus, plaintiff's claims would be barred.

B. Tolling Provision
Yet, the claims could be saved by a tolling provision which protects minors. Plaintiff relies on the Missouri tolling provision, Mo.Rev.Stat. § 516.170. That section provides that if any person entitled to bring an action under §§ 516.100 to 516.370 is, at the time the cause of action accrued, within the age of 21 years, such person shall be at liberty to bring the action within the respective times specified in §§ 516.100 to 516.370 limited after such disability is removed. Defendant relies instead on the Kansas tolling provision, K.S.A. § 60-515, under which a plaintiff is required to bring suit within one year of reaching age 18 years. Under the Kansas tolling provision, plaintiff's claim would be barred.
In Harper v. Gibson, 601 F.Supp. 156, 159 (W.D.Mo.1985), the court examined the policy considerations which underlie the borrowing statute. Quoting from Patch, supra, 652 F.2d at 756, the court noted that the purpose of a borrowing statute is primarily to prevent a plaintiff from forum shopping for a statute of limitations. The statute prevents a plaintiff from gaining more time to bring an action merely by suing in a forum other than where the cause of action accrued. Id., at 756.
*667 The court in Harper also noted that Missouri courts give effect to the legislatively expressed intent not to expand the period within which plaintiffs can file, but to impose "an additional limitation on the right to sue." Id., quoting Schnabel v. Taft Broadcasting Co., 525 S.W.2d 819, 825 (Mo.App.1975). If the statute of limitations of another state is more restrictive than that of Missouri, a longer Missouri statute will not be allowed to enlarge the time for filing. Harper, 601 F.Supp. at 159, citing McIndoo v. Burnett, 494 F.2d 1311, 1313 (8th Cir.1974).
The issue here is whether the borrowing statute adopts only the foreign state's limitations period, or whether other law such as a minor's tolling provision is borrowed, too. The question appears to be a novel one in Missouri regarding lawsuits filed by citizens of another state. The significance of a claimant's state of residence is apparent when one examines the policy underlying the borrowing statute. In this instance, for example, plaintiff's claim would be barred if the Kansas tolling provision were applicable, but would be viable if the Missouri tolling provision applies. Thus, by filing in a state with a more advantageous tolling provision, a party could engage in the sort of forum shopping which a borrowing statute was designed to prevent.
The purpose of a tolling provision is discussed at length in Strahler v. St. Luke's Hospital, 706 S.W.2d 7 (Mo.Banc 1986). In that case, the Supreme Court declared unconstitutional a two-year medical malpractice limitation that applied to persons as young as ten years of age. The court said, at 8-9, the statute
violates the mandate of Mo.Const. art. I, § 14, which guarantees to every Missouri citizen "that the courts of justice shall be open to every person, and certain remedy afforded for every injury to person...."
* * * * * *
Article I, section 14 is one such provision in our state constitution which grants to the people of Missouri an express constitutional guarantee not enumerated in our federal Constitution.
The court noted, at 11, that "the general tolling provisions of § 516.170 preserve the cause of action for a minor and safeguard the minor's constitutionally guaranteed right of access to the courts...."
In Dorris v. McClanahan, supra, the Missouri Supreme Court had occasion to consider the tolling statute in relation to the borrowing statute although, unlike here, the plaintiff was a Missouri resident. The court's decision was splintered; one justice joined the chief justice in the court's opinion, one justice concurred in the result, one justice concurred in a separate opinion, and two justices joined in another justice's dissenting opinion.
In Dorris, a minor was injured in an automobile accident with another Missouri resident during a brief errand into Illinois. The "majority" opinion borrowed the Illinois statutory limitations period, but refused to apply the Illinois minor tolling period  under which the claim would have been barred. Rather, the court relied on Strahler v. St. Luke's Hospital, supra, in a discussion of a minor's right to access to the courts under the Missouri constitution. 725 S.W.2d at 872. The opinion concluded, at 873:
Simply put, despite other statutes of limitations, a Missouri minor can bring his lawsuit within a limited period of time after he reaches age 21.
The separate concurring opinion had a similar statement: "A state has a primary interest in protecting its minor citizens in their access to its courts."
More justices (three) subscribed to the dissenting opinion than to either opinion of those who determined the result in Dorris. The dissent, at 874, strictly applied the language of the borrowing statute in finding that, where the tolling provision in a foreign state has been exceeded, an action is barred in that state and therefore barred in Missouri. The dissent also quoted, at 875, a legal tenet which was summarized in Devine v. Rook, 314 S.W.2d 932, 935 (Mo. App.1958), wherein the court stated:
The effect of the borrowing statute is not to extend the procedural law of one *668 state into another, but the borrowing state adopts and makes as its own (special statute of limitations) the statute of the other. But when such statute is so borrowed, it is not wrenched bodily out of its own setting, but taken along with it are the court decisions of its own state which interpret and apply it, and the companion statutes which limit and restrict its operation.
The court's decision in Dorris can be reconciled with the dissent by recognizing that the Missouri constitution guarantees access of citizens, including minors, to the courts. However, the Missouri constitution cannot presume to create rights for non-Missourians if such rights would be in derogation of their foreign state's statutes. Missouri courts have consistently refused to give extraterritorial effect to the Missouri wrongful death statute. Harper v. Gibson, supra, 601 F.Supp. at 158, citing Missouri Supreme Court cases. Certainly extraterritorial effect cannot be given to the Missouri constitution by Missouri courts.
Thus, the tolling provision which is intended to protect minors under the Missouri constitution should be used when Missouri citizens seek access to Missouri courts, even with claims originating outside Missouri. However, when a non-Missourian brings a claim from outside Missouri, that claimant should be protected only so far as provided in the state where the claim originated.
Applying the Missouri tolling provision to Missouri claimants, and the foreign tolling provision to foreign claimants, is consistent with the decision in Dorris and Strahler, and with the policy underlying borrowing statutes. First, it recognizes the Missouri constitution requires access to the courts for its citizens, but does not presume to interfere with the laws of other states. Second, it extends to foreign citizens the full level of protection afforded by the state in which the cause of action originated. Third, it precludes forum shopping for a more advantageous tolling statute. Finally, citizens and non-citizens are treated alike because both are subject to the statute of limitations where the action originated, and both are subject to the tolling provisions which were intended by their states to protect them.
To find that the Kansas tolling statute would apply here would defeat the scheme and purpose of the Missouri borrowing statute. It would permit a person to escape the unfavorable effects of a borrowed statute of limitations by invoking a more favorable tolling provision, thereby encouraging forum shopping. It also would permit a person to escape an unfavorable tolling provision in a state where the legislature already has struck a balance between plaintiffs and defendants, thereby interfering with that state's decision concerning its own citizens.

IV. Conclusion

In this instance, the Kansas tolling provision should be borrowed with the Kansas statute of limitations to bar a Kansas resident's claim which originated in Kansas. The decision to file suit in Missouri after the claim was barred in Kansas should not be permitted to defeat the lower level of protection that the Kansas legislature chose to apply in Kansas (and which has been upheld as constitutional by Kansas courts). See, Wheeler v. Lenski, 658 P.2d 1056 (Kan.App.1983).
It is
ORDERED that the motion filed October 25, 1988, by defendant E.R. Squibb & Sons, Inc., to dismiss is granted. It is further
ORDERED that the claims brought by plaintiff Karen Wayne in this civil action, number 83-1200-CV-W-1, against defendant E.R. Squibb & Sons, Inc., are dismissed with prejudice because they are barred by the applicable statute of limitations, and the parties shall bear their own costs.
NOTES
[1] Plaintiff said in her deposition that her dentist had explained the causal connection, and her pediatrician had told her mother about it, in 1969.
[2] As discussed above, the ascertainment of cause is not, alone, significant in determining when a cause of action accrues. So, it cannot control where the cause arose. If plaintiff's argument were valid, she could telephone or travel from her Kansas home to a doctor in any state to inquire about the tooth discoloration. Certainly she could not claim her action arose in whatever state that doctor happened to be when she learned of the causal connection.